UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANTHONY DOANE EDGE *and*
DEBORAH SUSAN EDGE,

        Defendants.

CRIMINAL NO. 14-201 (MJD/TNL)

REPORT AND RECOMMENDATION

> Katherine T. Buzicky, Assistant United States Attorneys, **United States Attorney's Office**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government;
>
> Robert W. Owens, Jr., **Owens Law, L.L.C.**, 5270 West 84th Street, Suite 300, Bloomington, MN 55437, for Defendant Anthony Doane Edge; and
>
> Manvir K. Atwal, **Office of the Federal Defender**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Defendant Deborah Susan Edge.

This matter is before the Court, Magistrate Judge Tony N. Leung, on Defendant Anthony Doane Edge's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 52), Motion to Suppress Statements, Admissions and Answers (ECF No. 53), Motion to Suppress Wire Interceptions, Electronic Surveillance and Wiretapping (ECF No. 54), Motion to Dismiss Counts 6 and 8 (ECF No. 55), Motion to Dismiss Indictment (ECF No. 57), and Motion to Dismiss Count 1 as Duplicitous (ECF No. 95), as well as Defendant Deborah Susan Edge's Motion to Dismiss Count 1 of the Indictment (ECF No. 66), Motion to Suppress Evidence Obtained as a Result of Search and Seizure

1

(ECF No. 68), and Motion to Suppress Statements, Admissions and Answers (ECF No. 69).

The Court heard oral arguments on the Motions on September 2, 2014. Katherine Buzicky represented the Government. Robert Owens, Jr., represented Defendant Anthony Doane Edge. Manny Atwal represented Defendant Deborah Susan Edge. The Court heard testimony from Special Agent Katie Booth of the Minnesota Bureau of Criminal Apprehension ("BCA") and Special Agent Jan May of the BCA.

The Government offered and the Court received the following exhibits:

- Government Exhibit 1 is an audio and video recording of Special Agent May's April 1, 2014 interview of Defendant Deborah Susan Edge;

- Government Exhibit 2 is an audio recording of Special Agent Booth's March 27, 2014 interview of Defendant Deborah Susan Edge;

- Government Exhibit 3 is a copy of the search warrant executed on March 27, 2014; and

- Government Exhibit 4 is a copy of a search warrant for a forensic examination of Defendant Deborah Susan Edge's cell phone dated May 6, 2014.

Defendant Deborah Susan Edge offered and the Court received the following exhibit:

- Defense Exhibit 1 is a photograph of the upstairs bedroom of the Edges' house wherein Special Agent Booth interviewed Defendant Deborah Susan Edge.

I.     FACTS

   A. The March 13, 2014 Omegle Tip

On March 13, 2014, the BCA received a tip from the National Center for Missing and Exploited Children (NCMEC) tipline that suspected child pornography was being broadcast over the internet using an Omegle live feed. Omegle is a company that provides online video conferencing and chat services allowing users to communicate anonymously with each other. The tip stated that Omegle's employees had intercepted a communication being broadcast over the Internet using an Omegle feed that appeared to be child pornography and child sexual exploitation. The tip further stated that the webcam used to transmit the communication was a Logitech HD webcam C510. The video stream contained 26 still files, all of which were captured on February 22, 2014, from the IP address of 96.42.236.164.

Agent May reviewed the tip and could see a pre-pubescent female in two of the still photos. In one photo, the prepubescent female was completely naked and performing oral sex on an adult male's penis. In the second photo, what appears to be the same pre-pubescent female appears to be standing up with her leg spread completely apart and some unidentifiable object in her mouth.

Further investigation showed that the internet service account was registered to Deborah Edge at an address she shared with Anthony Edge in Austin, Minnesota. Law enforcement also discovered that Anthony Edge was on the predatory offender registry. According to the registry, Anthony Edge was convicted of having over 2300 pictures of child pornography on his computer in 2006. In January 2009, Anthony Edge was

convicted of failing to register, but his sentence was stayed for two years. Agent May also discovered that four minors appeared to be living at the Edge household with the Defendants. Two of the four minors were female, one 15 year-old and one 6 year-old.

On March 27, 2014, Ageny May obtained from Mower County District Judge Fred Wellman a warrant to search the Edge residence and to seize any computer systems, media, personal electronic devices, hard drives, camera equipment, and other items related to child pornography and sexual exploitation of children. (Gov't Ex. 3.)

### B. Execution of the March 27, 2014 Warrant

Law enforcement executed the warrant to search the Edge residence on March 27, 2014. When they arrived, officers arrested Anthony Edge and escorted the four children away from the property. Agent Booth asked Deborah Edge if she would be willing to answer a few questions. Deborah Edge said that she would, and Agent Booth escorted her upstairs, past one bedroom and into the second bedroom. The second bedroom had two beds—Deborah Edge sat on the second bed, and Agent Booth sat on the first bed between Deborah Edge and the door.

Agent Booth questioned Deborah Edge in the second upstairs bedroom for approximately 25 minutes. (T. 15.) Agent Booth informed Deborah Edge that she was not under arrest and that she could leave the interview if she wished. Agent Booth did not read Deborah Edge her *Miranda* rights and never told her that she could have an attorney present if she wished. (T. 19, 21.) While this interview occurred, other law enforcement agents executed the search warrant throughout the Edge residence. After approximately 25 minutes, the interview came to a natural ending.

### C. Deborah Edge's Arrest

After the March 27, 2014 warrant was executed, law enforcement examined the evidence seized from the Edge residence. (T. 31.) On one video, Agent May saw Deborah Edge with one of the female children in the bathroom; the female child was naked, her head covered with a towel, and Deborah Edge could be seen communicating with someone on a cell phone. (T. 30-32.) Deborah Edge was arrested at the Edge residence on April 1, 2014. (T. 34.) When she was arrested, Deborah Edge was holding her cell phone. (Gov't Ex. 4.) She was taken to the Austin Police Department and interrogated by law enforcement. (T. 34.) On May 6, 2014, Agent May sought for and obtained from Ramsey County District Judge Shawn M. Bartsh a warrant to search Deborah Edge's cell phone. (Gov't Ex. 4.)

## II.   ANALYSIS

### A. Challenges to Search Warrants

Both Defendants challenge the admissibility of evidence found in executing the March 27, 2014 and March 31, 2014 warrants, arguing that the warrants were not supported by probable cause. Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v.*

*United States*, 362 U.S. 257, 271 (1960)). Facts supporting a search warrant "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)).

### 1.  Probable Cause Supports the March 27, 2014 Warrant

Agent May's affidavit supporting the March 27, 2014 warrant contained, *inter alia*, the following information: the BCA received a tip via the NCMEC cyber tip line from Omegle that the company had intercepted a child pornography video that was being broadcast on a live feed. Omegle reported that the video was made using a Logitech HD webcam C510, the stream contained 26 still files, and the files originated from IP address 96.42.236.164. Omegle provided screen captures of the video, and Agent May determined that several of the stills appeared to be of child pornography or sexual exploitation of a child. BCA determined that the IP address was associated with an account in the name of Deborah Edge in Austin, Minnesota. BCA then determined that Deborah Edge lived with Anthony Edge in Austin, Minnesota, and that Anthony Edge was a level 2 predatory sex offender. Anthony Edge had previously been convicted of having over 2,300 pictures of child pornography on his computer and of failing to register as a sex offender. Agent May's investigation also revealed that four children lived in the Edge residence, and photographs of one of the children resembled one of the children depicted in the still photographs from the Omegle live feed.

Agent May's affidavit sets forth the source of the NCMEC tip, her assessment of the files described as child pornography in the tip, and her process in associating Anthony and Deborah Edge with the IP address provided in the tip. Anthony Edge was a convicted level two sex offender with a history of possessing child pornography. Agent May had determined that four children lived at the Edge residence with Anthony and Deborah Edge, and one of the four children appeared to resemble the girl depicted in the still photographs contained in the NCMEC tip from Omegle. Based on the totality of these circumstances, the Court concludes that the information in the affidavit raised a fair probability that a search of the Edge residence and any computers or other electronic devices found there would result in the discovery of evidence of criminal activity.

### 2.  Probable Cause Supports the May 6, 2014 Warrant

In addition to the information contained in the affidavit supporting the March 27, 2014, the affidavit supporting the May 6, 2014 warrant contained, *inter alia*, the following information: during the execution of the March 27, 2014 search warrant at the Edge residence, law enforcement seized computers, electronic media, and pinhole cameras. During one of the videos contained on the electronic media seized, Deborah Edge could be seen sexually exploiting one of the children. During the incident, Deborah Edge could be seen communicating with another party on her cell phone. When Deborah Edge was arrested, law enforcement seized her cell phone. In a voluntary, post-arrest interview, Deborah Edge admitted to her involvement in sexually exploiting her daughter while talking with her husband on her cell phone.

Agent May's affidavit sets forth the source of the NCMEC tip, her assessment of the files described as child pornography in the tip, and her process in associating Anthony and Deborah Edge with the IP address provided in the tip. Anthony Edge was a convicted level two sex offender with a history of possession child pornography. Agent May had determined that four children lived at the Edge residence with Anthony and Deborah Edge, and one of the four children appeared to resemble the girl depicted in the still photographs contained in the NCMEC tip from Omegle. One of the videos seized from the Edge residence showed Deborah Edge holding her cell phone to communicate with another party while exploiting one of her children. Based on the totality of these circumstances, the Court concludes that the information in the affidavit raised a fair probability that a search of Deborah Edge's cell phone would result in the discovery of evidence of criminal activity. Accordingly, Defendants' motions to suppress for lack of probable cause must be dismissed.

### B. Defendant Anthony Edge's Individual Motions

#### 1. Motion to Dismiss the Indictment

Anthony Edge first moves to dismiss the indictment. When considering a pretrial motion to dismiss an indictment, the allegations contained in the indictment should be accepted as true. *See United States v. Najarian*, 915 F. Supp. 1460, 1463 n.3 (D. Minn. 1996) (citing *inter alia*, *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)). "[F]ederal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence." *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quoting *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992)). "Indictments are normally

8

sufficient unless no reasonable construction can be said to charge the offense." *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995) (citation omitted).

The Superseding Indictment charges Anthony Edge with producing child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2 ("Count 1"); several counts of attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e) ("Counts 2-8"); possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) ("Count 9"); and being a registered sex offender and committing a felony offense involving a minor in violation of 18 U.S.C. § 2260A ("Count 11").

Anthony Edge argues that the Superseding Indictment should be dismissed in its entirety because the videos identified in the Indictment do not constitute child pornography. (Mem. in Supp. of Mot. to Dismiss, ECF No. 58.) That determination, however, is not appropriate for pretrial determination. On its face, the Superseding Indictment contains a "plain, concise, and definite written statement of the essential facts [and elements] constituting" the offense charged. Fed. R. Crim. P. 7(c)(1). Accepting all of the allegations in the Superseding Indictment as true, the Government has sufficiently pleaded that Anthony Edge committed the acts charged.

With respect to the attempts charged in the Superseding Indictment, Anthony Edge argues that Counts 2 through 8 should be dismissed because the videos underlying the Counts do not depict child pornography. Crimes of attempt, however, require (1) an intent to commit the predicate offense and (2) conduct that constitutes a substantial step towards the offense's commission. *United States v. Blue Bird*, 372 F.3d 989, 993 (8th Cir.

9

2004). Whether Anthony Edge was successful in his attempts is immaterial to Counts 2 through 8. The Court determines that the Superseding Indictment sufficiently states the essential elements and facts constituting the offenses charged, including Counts 2 through 8. Accordingly, Anthony Edge's Motion to Dismiss the Indictment (ECF No. 57) must be denied.

### 2. Motions to Dismiss Duplicitous Counts 1, 6, and 8

Anthony Edge also moves to dismiss Counts 1, 6, and 8. With respect to Count 1, Anthony Edge argues that it is duplicitous because it charges him with both producing child pornography and attempting to produce child pornography in the same count. "'Duplicity' is the joining of a single count of two or more distinct and separate offenses." *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995) (quotation marks omitted). A charge that asserts several means of violating a statute in the conjunctive, however, is not duplicitous. *United States v. Spencer*, 592 F.3d 866, 875 (8th Cir. 2010). *See also Griffin v. United States*, 502 U.S. 46 (1991); *United States v. Byrne*, No. 09-14059-CR, 2010 WL 2243755, at *2 (S.D. Fla. June 4, 2010). As it applies here, either producing or attempting to produce child pornography as set forth in Count 1 of the Superseding Indictment would constitute a violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2. Moreover, "a general unanimity instruction is usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict." *United States v. Davis*, 154 F.3d 772, 783 (8th Cir. 1998). Accordingly, the Court determines that Count 1 is not duplicitous and Anthony Edge's Motion must be denied.

Anthony Edge further argues that Counts 6 and 8 are multiplicitous of Counts 4 and 7, respectively. The date and time stamp on the video underlying Count 4 shows a young girl undress and step into a shower at 9:54 on September 22, 2009, and the video underlying Count 6 shows the same young girl stepping out of the shower at 10:06 on September 22, 2009. The same facts fit the videos underlying Counts 7 and 8, but on a different date. Anthony Edge argues that these video pairs evidence one single attempt, and therefore two separate counts per video pair raises significant double jeopardy concerns. The Government argues that each separate video file constitutes a separate visual depiction underlying each Count.

In *United States v. Esch*, the Tenth Circuit addressed a similar issue involving multiple photographs taken from a single photographing session. 832 F.2d 531 (10th Cir. 1987). The court concluded that "[t]he fact that multiple photogrpahs may have been sequentially produced during a single photographing session is irrelevant. Each photograph depended upon a separate and distinct use of the [victims]." *Id.* at 542 (citing *Blockburger v. United States*, 284 U.S. 299, 302-03 (1932), *and United States v. Williams*, 685 F.2d 319, 321 (9th Cir. 1982)). The same reasoning applies to the instant case, where multiple videos were created from a single bathroom visit. The Court concludes that because the videos underlying Counts 6 and 8 are separate and distinct videos from those underlying Counts 4 and 7, respectively, Counts 6 and 8 are not multiplicitous and Anthony Edge's motion must be denied.

### 3. Defendant Anthony Edge Made No Statements to Suppress

Anthony Edge also moves to suppress any statements, admissions and answers that he made before, at the time or, or after his arrest. No evidence of any such statement by Anthony Edge was offered at the motions hearing, and the Government represents that it is unaware of any statements Anthony Edge made to law enforcement in this case. Accordingly, the Motion (ECF No. 53) must be denied as moot.

### 4. Motion to Suppress Wire Interceptions, Electronic Surveillance, and Wiretapping

Anthony Edge also moves to suppress any evidence the Government obtained from "interception of telephone communications, electronic surveillance and wiretapping." (Mot. to Suppress Wire Interceptions, ECF No. 54.) The Government represents that it conducted no wire interceptions, electronic surveillance, or wiretapping in connection with investigating the instant matter, and the Court notes that no evidence of any such activities was elicited at the motions hearing. Accordingly, Anthony Edge's Motion (ECF No. 54) will be denied as moot.

### C. Defendant Deborah Edge's Individual Motion

Deborah Edge argues that her statements to Agent Booth on March 27, 2014, should be suppressed because they were the product of an un-Mirandized custodial interrogation.

The Supreme Court held in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the

privilege against self-incrimination." 384 U.S. 436, 444 (1966). Custodial interrogation requiring *Miranda* warnings is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*; *Stansbury v. California*, 511 U.S. 318, 322 (1994). Requiring *Miranda* warnings before custodial interrogations is a prophylactic attempt to address "the inherently coercive nature of custodial interrogation" that can easily "'blur[ ] the line between voluntary and involuntary statements.'" *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2401 (2011) (quoting *Dickerson v. United States*, 530 U.S. 428, 435 (2000)).

"[W]hether a suspect is in 'custody' is an objective inquiry" that turns on two discrete questions: "'first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.'" *Id.* at 2402 (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted)). Courts in the Eighth Circuit consider the following six factors:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). Merely counting the number of *Griffin* factors, however, does not determine whether a person is in custody;

"the ultimate inquiry must always be whether the defendant was restrained as though [she] were under formal arrest." *United States v. Czichray*, 378 F.3d 822, 827-28 (8th Cir. 2004). "The critical inquiry is not whether the inquiry took place in a coercive or police dominated environment, but rather whether the defendant's freedom to depart was restricted in any way." *United States v. Cowan*, 674 F.3d 947, 957 (8th Cir. 2012) (quoting *United States v. Martinez*, 462 F.3d 903, 909 (8th Cir. 2006) (internal marks omitted)); *see also United States v. Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990) (listing six non-exhaustive factors for determining whether a suspect is in custody for *Miranda* purposes). "*Miranda* warnings are not required for 'general on-the-scene questioning as to the facts surrounding a crime.'" *United States v. Klein*, 13 F.3d 1182, 1184 (8th Cir. 1994) (quoting *Miranda*, 384 U.S. at 477-78).

Applying the *Griffin* factors to the March 27 interview, Agent Booth informed Deborah Edge that she was free to leave; Deborah Edge was not handcuffed or restrained during the interview; and Agent Booth did not prevent her from leaving at any time. Deborah Edge voluntarily acquiesced to law enforcement's request to answer questions. Agent Booth employed no strong-arm tactics or deceptive stratagems during the interview, and Deborah Edge was not placed under arrest at the end of the interview.

Throughout the interview, however, Deborah Edge's house was being searched by seven or eight law enforcement officers. Because these officers were in the process of executing a search warrant, Deborah Edge could not ask them to leave. Law enforcement vehicles were surrounding the home, and Deborah Edge's husband and children had just

been removed from the home. In light of this heavily police-dominated atmosphere, Deborah Edge argues that she was in custody for *Miranda* purposes.

The Court disagrees, taking specific guidance from *United States v. Williams*, 760 F.3d 811 (8th Cir. 2014). There, Williams returned home to find "about seven armed and uniformed agents" executing a search warrant at his home. *Id.* at 813. One of the agents showed Williams a copy of the warrant and asked whether he would consent to speak with the agent and answer a few questions. *Id.* The agent told Williams that he was not under arrest and that the decision to speak with law enforcement was voluntary, and Williams agreed to answer some questions. *Id.* The agent interviewed Williams in the living room—about fifteen feet from the front door—for 30 to 45 minutes. *Id.* Williams was not restrained, and at one point left the interview to get some water. *Id.* at 813-14. Williams was not arrested at the end of the interview. *Id.* at 814. During the interview, Williams made incriminating statements, some of which led law enforcement to seize the laptop from inside his car. *Id.* Noting that (1) Williams was informed that he was not under arrest, (2) the questioning occurred "'on [Williams's] own turf'", *id.* at 815 (quoting *United States v. Rorex*, 737 F.2d 753, 756 (8th Cir. 1984)), and (3) Williams was not arrested at the end of the interview, the Eighth Circuit determined that Williams was not in custody for *Miranda* purposes. *Id.* at 814-15.

Here, Anthony Edge and the children were removed from the house and law enforcement agents were executing a search warrant. When asked by Agent Booth, Deborah Edge voluntarily agreed to answer a few questions. Deborah Edge was not restrained; she was not prevented from leaving the room; and she was not arrested at the

15

end of the interview. Importantly, Deborah Edge was specifically informed that she was not under arrest and free to end the interview. Courts "have long regarded these admonitions as weighty in the custody analysis," and the Eighth Circuit "ha[s] never held that a person was in custody after receiving them." *United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) (internal citation omitted). Based on the totality of the circumstances, the Court determines that Deborah Edge was not in custody when she was interviewed by Agent Booth on March 27, 2014. Accordingly, her motion to suppress statements must be denied.

### III. RECOMMENDATION

Based on all the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant Anthony Doane Edge's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 52), Motion to Suppress Statements, Admissions and Answers (ECF No. 53), Motion to Suppress Wire Interceptions, Electronic Surveillance and Wiretapping (ECF No. 54), Motion to Dismiss Counts 6 and 8 (ECF No. 55), Motion to Dismiss Indictment (ECF No. 57), and Motion to Dismiss Count 1 as Duplicitous (ECF No. 95), as well as Defendant Deborah Susan Edge's Motion to Dismiss Count 1 of the Indictment (ECF No. 66), Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 68), and Motion to

Suppress Statements, Admissions and Answers (ECF No. 69) be **DENIED.**

Date:  November 3, 2014          <u>s/ Tony N. Leung</u>
                                             Tony N. Leung
                                             United States Magistrate Judge
                                             District of Minnesota

                                             *United States v. Edge et al.*
                                             File No. 14-cr-201 (MJD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before **November 17, 2014**; responses to any written objections must be filed with the Court on or before **November 24, 2014**.